# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARCOS HERNANDEZ, et al., | ) | Docket No. 2:16-cr-37-NT |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

The Grand Jury returned an indictment charging the Defendants with conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) (Count One); Hobbs Act robbery in violation of 18 U.S.C. §§ 2, 1951(a) (Count Two); and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(ii) (Count Three). (ECF No. 1). The Defendants move to dismiss Count Three on the grounds that conspiracy to commit Hobbs Act robbery and Hobbs Act robbery do not constitute crimes of violence as defined in § 924(c)(3). (ECF No. 121). For the following reasons, the motion is **DENIED**.

## METHOD OF ANALYSIS

In the parties' initial briefing, both sides assumed that a categorical analysis of the Hobbs Act was required. To perform a categorical analysis, I am required to identify the minimum criminal conduct necessary for conviction under the predicate offense's statutory elements without regard to the underlying facts in the case. *United*

*States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006).[1] If a Hobbs Act robbery could be committed without "the use, attempted use, or threatened use of physical force against the person or property of another," then the crime categorically is not a crime of violence for purposes of § 924(c)(3)(A).

At oral argument, I invited the parties to address whether it made sense to use a categorical approach in the context of a motion to dismiss a § 924(c) count of an indictment. It seemed strange to perform the categorical analysis for a count that is heading to trial. Both parties pointed me to a First Circuit opinion holding that it was not error to instruct a jury that the predicate crimes of tampering with and retaliating against an informant were, as a matter of law, crimes of violence for purposes of § 924(c). *See United States v. Weston*, 960 F.2d 212, 217 (1st Cir. 1992) *abrogated on other grounds by Stinson v. United States*, 508 U.S. 36 (1993). While the First Circuit did not use the term "categorical" in *Weston*, the parties nonetheless believe that categorical analysis is required.

---

[1] If a statute is divisible and an offense can be committed in alternate ways, I may peek at a limited number of documents (charging instrument, jury instructions, plea colloquy, plea agreement) to see if I can determine which of the alternate offenses supported the conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2281-85 (2013). Once that is done, I return to a fact-blind analysis of whether the minimum criminal conduct necessary for conviction under the alternative of the offense involved, has as an element, the use, attempted use or threatened use of physical force against the person or property of another.

The parties agree on the question of divisibility, and I will go along with their conclusions: (i) that the Hobbs Act is divisible; (ii) that the dividing line is between Hobbs Act extortion and Hobbs Act robbery; and (iii) that the robbery portion of the Hobbs Act is not divisible. Defs.' Mot. to Dismiss 6 (ECF No. 121) (citing *United States v. Williams*, 179 F. Supp. 3d 141, 149 (D. Me. 2016)); Gov.'s Opp'n 8-9 (ECF No. 128). Because the Defendants do not contest that they are being charged with Hobbs Act robbery, there is no need to do any further modified categorical analysis.

The Third Circuit recently addressed this precise question. Despite the defendant and government's agreement that categorical analysis was appropriate, the Third Circuit resisted:

> We do not agree that the categorical approach applies here. When the predicate offense, Hobbs Act robbery, and the § 924(c) offense are contemporaneous and tried to the same jury, the record of all necessary facts [are] before the district court. The jury's determination of the facts of the charged offenses unmistakably shed[s] light on whether the predicate offense was committed with "the use, attempted use, or threatened use of physical force against the person or property of another."

*United States v. Robinson*, No. 15-1402, 2016 WL 7336609, at *3 (3rd Cir. Dec. 19, 2016). In addition to *Robinson*, a number of lower courts have pointed out that categorical analysis does not make much sense in the case of a contemporaneously charged § 924(c) count.[2]

This growing consensus is based on the origins and purposes behind categorical analysis. The categorical approach was designed to guide courts in determining whether a predicate offense constitutes a crime of violence for the purposes of fashioning an appropriate sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("**ACCA**"). *Taylor v. United States,* 495 U.S. 575 (1990). At issue in *Taylor* was whether the defendant's two prior state burglary convictions should be considered violent felonies under ACCA. The Supreme Court unanimously held that

---

[2]      *See, e.g., United States v. Jimenez-Segura,* No. 07-146, 2016 WL 4718949, at *9-11 (E.D. Va. Sept. 8, 2016); *United States v. McCallister*, No. 15-171, 2016 WL 3072237, at *2-7 (D.D.C. May 31, 2016); *United States v. Wells*, No. 14-280, 2015 WL 10352877, at *4 (D. Nev. Dec. 30, 2015); *United States v. Morgan*, No. 14-20610, 2015 WL 9463975, at *2-5 (E.D. Mich. Dec. 18, 2015); *United States v. Standberry*, 139 F. Supp. 3d 734, 739 (E.D. Va. 2015); *United States v. McDaniels*, 147 F. Supp. 3d 427, 430-33 (E.D. Va. 2015).

to determine whether the burglaries qualified, the sentencing court could look only to the conviction and the statutory definition of the offense, not to the underlying facts involved in the particular offense.

In reaching this conclusion, the *Taylor* Court focused on three factors. First, the Court noted that "[s]ection 924(e)(1) refers to 'a person who . . . has three previous convictions' for—not a person who has committed—three previous violent felonies or drug offenses." *Id.* at 600. The Court interpreted this text as congressional intent to focus on the category of the conviction, not the underlying facts. *See id.* Second, the legislative history of ACCA suggested that a categorical approach was intended. "If Congress had meant to adopt an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant's prior offenses, surely this would have been mentioned somewhere in the legislative history." *Id.* at 601. Third, the Court pointed out "the practical difficulties and potential unfairness of a factual approach." *Id.* The Court was concerned that facts not found by a jury would be used to enhance the Defendant's sentence and envisioned the practical difficulties of determining the factual basis for a defendant's past, potentially old,[3] convictions. *Id.*

The Supreme Court has repeatedly restated the rationale for using categorical analysis under ACCA. *See Mathis v. United States,* 136 S. Ct. 2243, 2252-53 (2016); *Descamps v. United States*, 133 S. Ct. 2276, 2287 (2013). The categorical approach

---

[3]     As the Third Circuit pointed out in *Robinson*, the most recent of Taylor's prior burglary convictions occurred seventeen years before the proposed application of ACCA enhancements. *Robinson*, 2016 WL 7336609, at *3.

has been refined, *Shepard v. United States*, 544 U.S. 13 (2005) (applying categorical analysis to a defendant entering a plea instead of having a trial) and extended to other statutes and guidelines. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (using categorical analysis to determine whether a crime is an aggravated felony under the Immigration and Nationality Act); *Leocal v. Ashcroft,* 543 U.S. 1, 9-11 (2004) (applying categorical analysis under definition of crime of violence in 18 U.S.C. § 16); *Stinson*, 508 U.S. at 39 (applying categorical analysis under the career offender guideline, U.S.S.G. § 4B1.1). All these applications involve a backward look at a prior conviction.

The reasons used to support categorical analysis in *Taylor* do not fit the § 924(c) context. First, the text of § 924(c), which uses the term "offense," is different than that of § 924(e), which speaks in terms of "previous convictions." Second, the elaborate fact-finding process that *Taylor* was concerned about is not going to pose the same problems in a contemporaneously charged § 924(c) offense. The government must plead and prove the § 924(c) count beyond a reasonable doubt to a jury, or the defendant must admit a factual basis for a plea, so there are no fairness or Sixth Amendment concerns.[4] Finally, there are no concerns about having to relitigate the factual basis for old convictions or rely on old, possibly inaccurate recitations of fact. Rather, there will either be "a live case where fresh evidence will be presented to a

---

[4]     Although *Weston* indicates that the determination of whether a predicate felony constitutes a crime of violence is a matter of law, this does not preclude a jury from doing the fact-finding regarding how a predicate act was committed. I can envision either staged deliberations or questions on a special verdict form that would allow the jury to determine the means of committing the offense before going on to decide a § 924(c) count.

jury," *United States v. Woodley*, No. 15-cr-20007, 2015 WL 7770859, at *4 (E.D. Mich. Dec. 5, 2015), or a guilty plea that will be based on an adequate factual basis to demonstrate whether the way in which the crime was committed had the requisite use of physical force. Despite the agreement of the parties to the contrary, I conclude that categorical analysis is not appropriate here and would deny the motion to dismiss on that basis alone. But, out of an abundance of caution and because it does not affect the outcome, I will conduct the categorical analysis.

## DISCUSSION

### I.    Statutory Background

The categorical analysis requires a close look at the language of both § 924(c) and the Hobbs Act.

#### A.    Using or Carrying a Firearm During a Crime of Violence, 18 U.S.C. § 924(c)

Under § 924(c),

> any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years . . . .

18 U.S.C. § 924(c)(i)(A), (ii). The term "crime of violence" as used in §924(c) means:

> an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

6

18 U.S.C. § 924(c)(3)(A)-(B). Section 924(c)(3)(A) is commonly referred to as the "force clause," and § 924(c)(3)(B) as the "residual clause."

The parties have not pointed to a Supreme Court or First Circuit case defining the term "physical force" under § 924(c)(3). In *Johnson v. United States*, the Supreme Court defined the term "physical force" for purposes of ACCA as "violent force . . . capable of causing physical pain or injury to another person." 559 U.S. 133, 140 (2010) ("*Johnson I*"). Here, the parties agree that the *Johnson I* definition of physical force applies. It is not clear to me that § 924(c)(3) requires violent force,[5] but I will accept the Government's concession, at least as it is applied to the portion of § 924(c)(3) that deals with physical force against the person of another.

Whether the residual clause under § 924(c)(3) is still valid is an open question in this Circuit. In *United States v. Johnson*, the Supreme Court held that a similar, but not identical, residual clause of ACCA was unconstitutionally vague. 135 S. Ct. 2551 (2015) ("*Johnson II*").

---

[5]     In *United States v. Nason*, the First Circuit interpreted the term "physical force" as it is used in the definition of a misdemeanor crime of domestic violence in 18 U.S.C. § 921(a)(33)(A). 269 F.3d 10 (1st Cir. 2001). After consulting Black's Law Dictionary and other dictionaries, the First Circuit determined that the "widely accepted" meaning of "physical force" was "characterized as power, violence, or pressure directed against another person's body." *Id.* at 16. " 'Violence' is essentially a subset of physical force involving injury or risk of harm." *Id.* at 17. The parties do not analyze whether Congress intended the term "physical force" to have a more demanding standard under § 924(c), and I do not undertake to do that research myself. I would note that two district courts within the Second Circuit have refused to apply the "violent force" definition from *Johnson I* to § 924(c). *United States v. Pena*, 161 F. Supp. 3d 268, 272 (S.D.N.Y. 2016) ("*Pena I*"); *United States v. Pena*, No. 14- 555-3, 2016 WL 3208913 (E.D.N.Y. June 3, 2016) ("*Pena II*"). Instead, the courts in the *Pena* cases used the "power, violence, or pressure directed against a person or thing" standard that the Second Circuit had used under 18 U.S.C. § 16's definition of "crime of violence," which has an identical force clause as § 924(c). *Pena II*, 2016 WL 3208913, at *3 (quoting *Santana v. Holder*, 714 F.3d 140, 144 (2d Cir. 2013)). "Although the *Johnson* [*I*] definition may be the law of the land in the context of the ACCA—which uses a force clause that lacks reference to the use of force against property—the *Santana* definition remains 'forceful' in the context of 18 U.S.C. § 16, and, in this Court's view, § 924(c)(3)." *Id.*

**B.      The Hobbs Act, 18 U.S.C. § 1951**

The Hobbs Act provides that:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).

The Hobbs Act defines "robbery" as:

The unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of *actual or threatened force, or violence, or fear of injury, immediate or future*, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1) (emphasis added).

**II.      The Defendants' Arguments**

The Defendants make essentially three arguments in support of their motion to dismiss the § 924(c) charge: (i) a Hobbs Act robbery is not a crime of violence because it does not have as an element the use, attempted use or threatened use of physical force as required under the § 924(c) force clause; (ii) a conspiracy to commit Hobbs Act robbery is similarly not a crime of violence; and (iii) the § 924(c) residual clause is unconstitutional in the wake of *Johnson II.*

**A.      Hobbs Act Robbery and the Force Clause**

The First Circuit has not yet addressed whether Hobbs Act robbery categorically constitutes a crime of violence post-*Johnson II*. Before *Johnson II,* the First Circuit concluded that Hobbs Act robbery was categorically a crime of violence,

but it did not specifically do so under the force clause. *See United States v. Morales-Machuca*, 546 F.3d 13, 21 (1st Cir. 2008) (not specifying whether Hobbs Act robbery was a crime of violence under the force or residual clause); *United States v. Turner*, 501 F3.d 59, 67-68 (1st Cir. 2007) (finding conspiracy to commit Hobbs Act robbery was a crime of violence under the residual clause).

At least two Circuits have addressed the question post-*Johnson II* and concluded that the Hobbs Act categorically qualifies as a crime of violence under § 924(c)(3)(A). *United States v. Hill*, 832 F.3d 135, 141-44 (2d Cir. 2016) (rejecting claim that "fear of injury" under Hobbs Act can be accomplished without the "use, attempted use or threatened use of physical force"); *United States v. Howard*, 650 Fed. App'x. 466, 468 (9th Cir. 2016) ("Hobbs Act robbery by means of 'fear of injury' . . . qualifies as crime of violence.").

Three judges within this District have also recently concluded that Hobbs Act robbery constitutes a crime of violence under § 924(c)(3)(A). *United States v. Williams*, 179 F. Supp. 3d 141, 154-55 (D. Me. 2016); *Craig v. United States*, No. 16-303, 2016 WL 5874965, at *5 (D. Me. Oct. 7, 2016); *United States v. Pomerleau*, No. 7-115, 2016 WL 6471202, at *2 (D. Me. Nov. 1, 2016). Numerous district courts outside this Circuit have likewise concluded that Hobbs Act robbery categorically is a crime of violence under the § 924(c) force clause.[6]

---

[6]     *Blackstone v. United States*, No. 99-257, 2016 WL 7469579, at *5 (C.D. Cal. Dec. 27, 2016); *United States v. Barrows*, No. 13-185, 2016 WL 4010023, at *2-4 (D. Nev. July 25, 2016); *United States v. Bailey*, No. 14-328, 2016 WL 3381218, at *2-6 (C.D. Cal. June 8, 2016); *Pena*, 2016 WL 3208913, at *1-4; *McCallister*, 2016 WL 3072237, at *7-8; *United States v. Smith*, No. 11-58, 2016 WL 2901661, at *4-5 (D. Nev. May 18, 2016); *United States v. Reed*, No. 15-113-1, 2016 WL 2892055, at *3-4 (W.D. La. May 16, 2016); *United States v. Coleman*, No. 14-664, 2016 WL 1435696, at *1-3 (N.D. Ill. Apr. 12, 2016); *United States v. Clarke*, 171 F. Supp. 3d 449, 453 (D. Md. 2016); *United States v. Hancock*, 168

The Defendants argue that Hobbs Act robbery categorically fails to qualify as a crime of violence under the force clause for three reasons. First, Defendants contend that the minimum criminal conduct required for a Hobbs Act robbery conviction would be a threat of damage to property, which could be accomplished without violent force. Second, they claim that putting a victim in fear of injury to her *person* could also be accomplished without violent force. Third, and this argument is buried within the Defendants' fear of injury argument, the Defendants contend that Hobbs Act robbery by "actual or threatened force" could be accomplished by force not amounting to violent force.[7]

Interestingly, the issue of whether a Hobbs Act robbery is a crime of violence under § 924(c) is tearing through the district courts. New opinions are being filed on this topic practically every week. So far, all the courts have rejected the argument that the force required to generate "fear of injury to person or property" is less than

_____

F. Supp. 3d 817, 824 (D. Md. 2016); *Pena*, 161 F. Supp. 3d at 284; *United States v. Lenzy*, No. 14-25, 2016 WL 1019712, at *3 (N.D. Ga. Feb. 4, 2016); *United States v. Bennett*, No. 15-134, 2016 WL 354753, at *4 (E.D. Va. Jan 27, 2016); *United States v. Crawford*, No. 15-70, 2016 WL 320116 (N.D. Ind. Jan. 27, 2016); *United States v. Walker*, No. 15-49, 2016 WL 153088, at *5-6 (E.D. Va. Jan. 12, 2016); *McDaniels*, 147 F. Supp. 3d at 430-33; *United States v. Anglin*, No. 14-3, 2015 WL 6828070, at *6 (E.D. Wis. Nov. 6, 2015); *United States v. Redmond*, No. 14-226, 2015 WL 5999317, at *4 (W.D.N.C. Oct. 13, 2015); *Standberry*, 139 F. Supp. 3d at 740; *United States v. Hunter*, No. 12-124, 2015 WL 6443084, at *2 (E.D.Va. Oct. 23, 2015); *United States v. Brownlow*, No. 15-34, 2015 WL 6452620, at *5 (N.D. Ala. Oct. 26, 2015); *United States v. Merinord*, No. 15-136, 2015 WL 6457166, at *5 (E.D.N.C. Oct, 26, 2015).

[7]     The Defendants also suggest that Hobbs Act robbery could be accomplished without the "*intentional* threat of physical force" and therefore categorically fail to satisfy an implied intent requirement under § 924(c)(3)(A). Defs.' Mot. to Dismiss 2, 7. The Defendants do not develop this argument, however, and I will not make it for them. *Díaz-Colón v. Fuentes-Agostini*, 786 F.3d 144, 149 (1st Cir. 2015) ("[w]e deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument."). I note, however, that other courts who have considered this argument have rejected it. *See, e.g., United States v. Hill*, 832 F.3d 135, 143 n.10 (2d Cir. 2016); *Williams*, 179 F. Supp. 3d at 153-54; *Barrows*, 2016 WL 4010023, at *3-4; *Bailey*, 2016 WL 3381218, at *5-6; *Pena*, 161 F. Supp. 3d at 283-84.

the force required by § 924(c).[8] But the Defendants' third argument—that the quantum of force needed for a Hobbs Act robbery committed with "actual or threatened force" is less than violent force—appears to have been squarely presented only to one court. *See United States v. Johnson*, No. 16-29, 2016 WL 7223264, at *3-4 (C.D. Cal. Dec. 12, 2016) (holding that Hobbs Act robbery is categorically a crime of violence). I address each of the Defendants' arguments in turn.

### 1. Whether Fear of Injury to Property Requires Violent Physical Force

In support of their first argument, the Defendants posit a number of hypotheticals that they claim demonstrate the minimal culpable conduct required for a Hobbs Act robbery. A perpetrator could commit a Hobbs Act robbery by putting someone in fear of injury to his property, for example, by merely threatening to pour out an expensive bottle of wine, flush drugs down the toilet, delete computer records, contaminate food, or deface art. Defs.' Reply 2 (ECF No. 137). Since these actions do not involve physical force capable of causing injury, they conclude, Hobbs Act robbery categorically fails as a predicate for a § 924(c) charge.

There are two problems with this argument. First, under the categorical analysis, judges are directed to determine not whether there is a "theoretical possibility" that the minimum criminal conduct would require the use of physical force, but rather whether there is a "realistic probability." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *see also United States v. Fish,* 758 F.3d 1, 6 (1st

---

[8]     *See supra* note 5.

Cir. 2014) ("[i]n assessing whether the elements of the candidate proposed as a predicate crime are overbroad, we need not consider fanciful, hypothetical scenarios."). To show a "realistic probability," the defendant must point to a case where "courts in fact did apply the statute" in the manner he claims they would. *Duenas-Alvarez*, 549 U.S. at 193. Here, the Defendants have not pointed to any cases with similar factual scenarios that were actually prosecuted. The Defendants examples are theoretically possible, but not realistically probable, and under *Duenas-Alvarez*, I am not required to consider them.

Second, the Defendants' argument assumes that the *Johnson I* definition of "physical force against the person of another" under ACCA extends to the meaning of physical force against property under § 924(c)(3).[9] *Johnson I* interprets the ACCA force clause as requiring violent force or force "capable of causing physical pain or injury to another person." 559 U.S. at 140. Applying the logic of *Johnson I* to the context of force against property, it would seem reasonable to focus on the effect of the force on the property and to require force capable of causing damage to property. Therefore, a Hobbs Act robbery involving the fear of injury to property is logically a threat of force capable of causing damage to property. Accordingly, I am unpersuaded by the Defendants' arguments that their Hobbs Act robbery hypotheticals—which all

---

[9]     Section 924(c)(3)'s force clause reads "has as an element the use, attempted use, or threatened use of physical force against the person *or property* of another . . . ." 18 U.S.C. § 924(c)(3)(A) (emphasis added). ACCA's force clause requires that the predicate offense "has as an element the use, attempted use, or threated use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

involve a fear of damage or destruction of property—would not have as an element the threatened use of physical force against property required by § 924(c)(3)(A).

## 2. Whether Fear of Injury to Person Requires Use of Violent Physical Force

Defendants' second argument is that a Hobbs Act robbery committed by placing a victim in fear of injury to their person could be committed without violent force if, for example, they had an intimidating style of dress or demeanor or simply told a victim to "give me your wallet." Defs.' Mot. to Dismiss 9. The Government responds that a Hobbs Act robbery by means of fear of injury is designed to reach conduct where the defendant did not make a threat, but "intentionally instilled or exploited the victim's fear of injury from the use of force." Gov.'s Opp'n 12 (ECF No. 128) (quoting *United States v. Pena*, 161 F. Supp. 268, 280 (S.D.N.Y. 2016)).

The Defendants have offered nothing new here. Their hypotheticals are far-fetched, not backed up by real-life cases, and have been rejected by numerous other courts. For the reasons set forth in *Hill* and echoed in *Williams* and every other court that has considered it, I agree that the "fear of injury" prong of the Hobbs Act should be interpreted as a fear of injury from the use of force capable of causing injury to a person or property. *See Hill*, 832 F.3d at 141-44; *Williams*, 179 F. Supp. 3d at 151; *Howard*, 650 Fed. App'x. at 468; cases collected *supra*, note 5.

## 3. Whether Actual or Threatened Force Requires Use of Violent Physical Force

In their third argument—that the means of "actual or threatened force" itself does not necessarily involve the type of violent force required by *Johnson I*—the Defendants are breaking new ground. The cases cited by the parties have mostly

assumed or the defendants have conceded that the "actual or threatened force" clause has as an element the use, attempted use, or threatened use of physical force. *See, e.g., Hill*, 832 F.3d at 141-44; *Williams*, 179 F. Supp. 3d at 152. But here, the Defendants boldly go where few have gone before, taking issue with the statement in *Williams* that it is "self-evident that a Hobbs Act robbery committed by means of 'actual or threatened force' or violence meets the required 'physical force' element." Defs.' Mot. to Dismiss 8 (quoting *Williams*, 179 F. Supp. 3d at 152). The Defendants argue "[a]ll force is not violent force" and provide as an example a purse snatching, which they claim "meets the 'actual force' requirement of a Hobbs Act robbery, yet does not amount to the level of force required for a crime of violence post-*Johnson* [*I*]." Mot. to Dismiss 8.

The Government assumes that a Hobbs Act robbery requires "violent force" as defined in *Johnson I* and points to *Williams* and *Hill*. But, as discussed, those cases addressed arguments made under the "fear of injury" clause. The Government does not address the argument that the term "actual force" could require less force than "violent force" under *Johnson I*. I do not blame the Government for not discerning the Defendants' argument, however, because it is poorly developed and hidden within the Defendants' section on "fear of injury."

At issue is the level of force required for a Hobbs Act robbery conviction under the "actual or threatened force" clause. The Defendants rely on *Jackson v. United States* for their argument that actual force could be less than violent force. No. 06-94, 2016 WL 3167073 (D. Me. June 6, 2016). In *Jackson*, Judge Singal concluded that a

conviction for robbery under the Maine robbery statute, 17-A M.R.S.A. § 651(1)(C), did not categorically qualify as a violent felony under ACCA's force clause. The *Jackson* decision relied on a Law Court opinion in a purse snatching case that interpreted the Maine robbery "physical force" requirement as "*any* physical force." 2016 WL 3167073, at \*2 (quoting *Raymond v. State,* 467 A.2d 161, 164-65 (Me. 1983)).

I agree with the Government that *Jackson* is distinguishable. Under Maine law any degree of physical force is sufficient to elevate theft to a robbery, and that categorically removes Maine robbery as a violent felony predicate under ACCA. *Jackson* would be persuasive in this case only if I were to interpret Hobbs Act robbery as committable by *any* degree of force.

To interpret the "actual or threatened force" clause of the Hobbs Act for the amount of force required, I follow the roadmap for statutory construction set down in *United States v. Nason.* 269 F.3d 10 (1st Cir. 2001). First, I examine the text of the Hobbs Act, which, as stated above, defines "robbery" as:

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of *actual or threatened force, or violence, or fear of injury, immediate or future,* to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1) (emphasis added). In interpreting the term "actual force," I assume "absent evidence to the contrary, that Congress knew and adopted the widely accepted legal definitions of meanings associated with the specific words enshrined in the statute." *Nason*, 269 F.3d at 16. As the First Circuit did in *Nason*, I consult Black's Law Dictionary, which defines "actual force" as "[f]orce consisting in a

physical act, esp. a violent act directed against a robbery victim."[10] *Black's Law Dict.* (10th ed. 2014).

"Ultimately, context determines meaning." *Johnson I*, 559 U.S. at 139; *see also United States v. Castleman*, 134 S. Ct. 1405, 1410-12 (2014) (defining "physical force" differently in the context of domestic violence than in the ACCA context of a violent felony). Here the context for the term "actual force" is the Hobbs Act robbery statute, which requires an "unlawful taking or obtaining of personal property from the person or in the presence of another, against his will" that "obstructs, delays, or affects commerce." 18 U.S.C. § 1951(a)-(b)(1). Black's Law Dictionary's definition of "actual force" and its reference to a *violent* act against a *robbery* victim, suggests to me that the ordinary meaning of "actual force" in the robbery context involves something more than any physical force. It is reasonable, therefore, that the meaning of Hobbs Act "actual force" is force "capable of causing pain or injury" or force "capable of damaging property."

In *Nason*, the First Circuit went on to consider whether the wording of adjacent statutory provisions or the legislative history suggested a meaning other than the ordinary meaning of the term used there. The Defendants here offer no statutory comparisons and make no legislative history arguments that would suggest a different definition. In fact, other than to suggest that a purse snatching has the

---

[10]     Interestingly, Black's Law Dictionary's definition of "actual force" cross references the term "physical force."

requisite force to constitute a violation of the Hobbs Act, the Defendants offer no exegesis of what level of force is required by the term "actual force" in the Hobbs Act.

This brings me back to the purse snatching scenario. In my opinion, a purse snatching is capable of causing pain or injury to person and/or property. Thus, if it met the commerce element, it could be the basis for a Hobbs Act robbery and could be considered a crime of violence under § 924(c)(3). The Defendants have not met their burden under *Duenas-Alvarez* of providing examples of real Hobbs Act robbery prosecutions involving actual or threatened force *not capable* of causing injury. *See* 549 U.S. at 193.

To summarize, I conclude that all the means of committing a Hobbs Act robbery—actual or threatened force, violence, and placing a person in fear of injury to person or property—have as an element the use, attempted use or threatened use of physical force as defined by *Johnson I*.

### B. Hobbs Act Conspiracy and the Force Clause

The Defendants argue that conspiracy to commit Hobbs Act robbery does not "have as an element the use, attempted use, or threatened use of physical force against the person or property of another." Defs.' Mot. to Dismiss 9. Because conspiracy requires as little as a "tacit understanding" with no overt act, the Defendants argue, there is no conduct element that would satisfy § 924(c)(3)(A). Defs.' Reply 3 (quoting *United States v. Palmer*, 203 F.3d 55, 63 (1st Cir. 2000)).

The First Circuit has previously held that conspiracy to commit a crime of violence is itself a crime of violence under § 924(c). *Turner*, 501 F.3d at 68. However, this conclusion was made in the context of the residual clause's "substantial risk" of

physical force requirement. It seems plain to me that the "use, attempted use, or threatened use of physical force against the person or property of another" is not an element of conspiracy, which requires simply the intent to enter into an agreement and the intent to achieve the criminal objective of that agreement. *See United States v. Gore*, 636 F.3d 728, 731 (5th Cir.2011); *United States v. White*, 571 F.3d 365, 368-69 (4th Cir. 2009), *abrogated on other grounds by Johnson II*, 135 S. Ct. 2551; *United States v. King*, 979 F.2d 801, 801-03 (10th Cir.1992); *United States v. Baires-Reyes*, No. 15-122, 2016 WL 3163049, at *2 (N.D. Cal. June 7, 2016); *United States v. Edmundson*, 153 F. Supp. 3d 857, 859-60 (D. Md. 2015). I therefore conclude that conspiracy to commit Hobbs Act robbery is categorically not a crime of violence under the force clause of § 924(c)(3)(A).

### C. The Residual Clause

My conclusion that conspiracy is not categorically a crime of violence under § 924(c)(3)(A) raises the issue of whether conspiracy to commit Hobbs Act robbery constitutes a crime of violence under § 924(c)(3)(B). As introduced above, § 924(c)'s definition of "crime of violence" has a residual clause in addition to a force clause, which covers any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B).

In *Johnson II,* the Supreme Court addressed the constitutionality of the residual clause found in ACCA. The ACCA residual clause defines a violent felony as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct

that presents a serious potential risk of physical injury to another." § 924(e)(2)(B)(ii).

The Supreme Court held:

> Two features of [ACCA's] residual clause conspire to make it unconstitutionally vague. In the first place, the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime. It ties the judicial assessment of risk to a judicially imagined "ordinary case" of a crime, not to real-world facts or statutory elements. . . .
>
> At the same time, the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony. It is one thing to apply an imprecise "serious potential risk" standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction. By asking whether the crime "otherwise involves conduct that presents a serious potential risk," moreover, the residual clause forces courts to interpret "serious potential risk" in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives. . . . By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates.

*Johnson II*, 135 S. Ct. at 2557-58. In reaching its conclusion, the Supreme Court noted that *Johnson II* marked the fifth time it had dealt with whether a crime fell under ACCA's residual clause. *Id*. at 2558-60.

The Defendants argue that § 924(c)'s residual clause, like ACCA's, is unconstitutionally vague.[11] Defs.' Mot. to Dismiss 11-13. Both statutes, the Defendants argue, call for categorical analysis to determine whether conduct in the "ordinary case" of an offense poses a "substantial risk." *See* Defs.' Mot. to Dismiss 11-13; *see also Johnson II*, 135 S. Ct. at 2557-58.

---

[11] Under the Fifth Amendment, a criminal statute is impermissibly vague where it "fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *United States v. Johnson*, 135 S. Ct. 2551, 2556 (2015) ("*Johnson II*").

The Government argues that § 924(c)'s residual clause remains viable after *Johnson II* because it is distinguishable from ACCA's residual clause in five material aspects. For its first two arguments, the Government focuses on the differences in the language in the statutes. It claims that § 924(c)'s residual clause is "more targeted and straightforward" because it "confines the risk assessment to only those risks that arise during the commission of the offense" and speaks in terms of "force" rather than "injury." Gov.'s Opp'n 15-16. Third, the Government contends that the enumerated list in ACCA's residual clause introduces a level of confusion not found in § 924(c)(3)(B). Gov.'s Opp'n 16-17. Fourth, the Government argues that § 924(c), which sets forth a new offense only if perpetrated with a firearm, functions differently and more narrowly than ACCA, which identifies offenses for a recidivist enhancement. Gov.'s Opp'n at 17. Finally, the Government points out that "[i]n contrast to its ACCA jurisprudence, the Court has never had occasion to resolve a disputed question about the meaning" of § 924(c)'s residual clause. Gov.'s Opp'n 17. And, when the Court addressed the 18 U.S.C. § 16(b) residual clause, which is worded identically to § 924(c)(3)(B), its interpretation of what conduct constitutes an "ordinary case" was unanimous. Gov.'s Opp'n 17 (citing *Leocal*, 543 U.S. at 10).

I acknowledge that if a categorical approach is mandated,[12] § 924(c)'s residual clause requires an assessment of risk as applied to an "ordinary case" abstraction. Whether § 924(c)'s residual clause survives depends on whether one reads *Johnson*

---

[12]     Again, I am reminded how this whole controversy could be avoided if we jettisoned the categorical approach for contemporaneously charged § 924(c) counts. To me it makes little sense to imagine the "ordinary case" when we will have real-world facts that can be tried to a jury.

*II* broadly or narrowly. *See, e.g., United States v. Gonzalez-Longoria,* 831 F.3d 670, 675-76 (5th Cir. 2016) (en banc) (upholding the constitutionality of § 16(b)'s residual clause and suggesting that *Johnson II* should be read narrowly "as a long-considered ill-ease and eventual repudiation of the categorical approach in the specific context of the Armed Career Criminal Act's residual clause."). I see little point in getting out ahead of the Supreme Court in this complicated area.

I agree with the Second, Sixth, and Eighth Circuits that § 924(c)'s residual clause is distinct enough from ACCA's residual clause to uphold its constitutionality. *Hill*, 832 F.3d at 146-50; *United States v. Taylor*, 814 F.3d 340, 375-79 (6th Cir. 2016); *United States v. Prickett*, 839 F.3d 697, 698-700 (8th Cir. 2016); *cf. Gonzalez-Longoria*, 831 F.3d at 675-77 (finding *Johnson II* does not render § 16(b) unconstitutional). *But cf. Golicov v. Lynch*, 837 F.3d 1065, 1072 (10th Cir. 2016) (*Johnson II* renders § 16(b) void for vagueness); *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016); *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015), *cert. granted Lynch v. Dimaya*, 137 S.Ct. 31 (2016).[13] The Sixth Circuit succinctly summarized the differences:

> [S]everal factors distinguish the ACCA residual clause from § 924(c)(3)(B). First, the statutory language of § 924(c)(3)(B) is distinctly

---

[13]    The majority of district courts to consider this issue have also distinguished § 924(c)(3)(B) from ACCA's residual clause. *See United States v. Moreno-Aguilar*, No. 13-496, 2016 WL 4089563, at *6-9 (D. Md. Aug. 2, 2016); *Kundo v. United States*, No. 16-436, 2016 WL 3079755, at *2-3 (D. Utah, May 31, 2016); *United States v. Green*, No. 15-526, 2016 WL 277982, at *3-5 (D. Md. Jan. 22, 2016); *United States v. Tsarnaev*, 157 F. Supp. 3d 57, 71-74 (D. Mass. 2016); *United States v. Checora*, 155 F. Supp. 3d 1192, 1201-03 (D. Utah 2015); *McDaniels*, 147 F. Supp. 3d at 436-37; *United States v. Lusenhop*, No. 14-122, 2015 WL 5016514, at *3 (S.D. Ohio Aug. 25, 2015). *But see United States v. Herr*, No. 16-10038, 2016 WL 6090714, at *2 (D. Mass. Oct. 18, 2016); *United States v. Baires-Reyes*, No. 15-122, 2016 WL 3163049, at *4-5 (N.D. Cal. June 7, 2016) (relying on *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015)).

narrower, especially in that it deals with physical force rather than physical injury. Second, the ACCA residual clause is linked to a confusing set of examples that plagued the Supreme Court in coming up with a coherent way to apply the clause, whereas there is no such weakness in § 924(c)(3)(B). Third, the Supreme Court reached its void-for-vagueness conclusion only after struggling mightily for nine years to come up with a coherent interpretation of the clause, whereas no such history has occurred with respect to § 924(c)(3)(B). Finally, the Supreme Court was clear in limiting its holding to the particular set of circumstances applying to the ACCA residual clause, and only some of those circumstances apply to § 924(c)(3)(B).

*Taylor*, 814 F.3d at 376.

Because I hold that the residual clause under § 924(c) is constitutional after *Johnson II*, I easily conclude that the Hobbs Act conspiracy count is a crime of violence under the residual clause. *Turner*, 501 F.3d at 68 ("[c]onspiracy under the Hobbs Act constitutes a 'crime of violence' for purposes of 18 U.S.C. § 924(c)).

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendants' motion.


SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 11th day of January, 2017.